NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FRANK SANCHEZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 07-5382 (WJM) |
| v. | : | |
| | : | |
| JACK DOES 1-40, et al., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |
| | : | |

**WILLIAM J. MARNINI, District Judge**

This matter comes before the Court upon submission of amended complaints by Plaintiff Frank Sanchez ("Sanchez"). This Court construes as Sanchez's amended complaints as his motion for reconsideration. For the reasons stated below, Sanchez motion for reconsideration will be granted, and Sanchez will be allowed to submit a "re-amended" complaint.

**BACKGROUND**

**I.    Origination of the Instant Action**

On September 21, 2007, the Clerk received the complaint docketed in the instant matter as Entry No. 1. The complaint asserted claims on behalf of numerous plaintiffs ("Plaintiffs"),

Sanchez being listed as one of them.[1]  See Docket Entry No. 1. On November 1, 2007, this Court issued an Order and accompanying Opinion ("November Order and November Opinion") dismissing the original complaint and terminating the case.[2]  See Docket Entries Nos. 2, 3.  Claims of certain Plaintiffs were dismissed without prejudice (and these Plaintiffs were granted leave to submit their amended complaints), while claims of other Plaintiffs, Sanchez included, were dismissed with prejudice.  See id.

On November 27, 2007, the Clerk received a document from Sanchez titled "amended complaint."  See Docket Entry No. 4.  The submission arrived accompanied by Sanchez's applications for appointment of pro bono counsel.  See Docket Entry No. 5.

## II.  **Original Complaint**

This original complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated

---

[1]
Plaintiffs were a group of persons involuntary civilly-committed pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 et seq., and confined at the Special Treatment Unit, Annex, Avenel, New Jersey ("Facility"); Plaintiffs "self-certified" themselves into a "class" for the purpose of filing their original complaint.  See Docket Entry No. 1.

[2]
All Plaintiffs other than Plaintiff Banda, the person who appeared to be the drafter of the original complaint, were terminated as Plaintiffs in this action, and the Clerk opened individual matters for each of these Plaintiffs, Sanchez included. See Docket Entry No. 4.  The instant matter was opened for Sanchez.

by one hundred and eight defendants.[3]  See Docket Entry No. 1.

The allegations set forth in the original complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to--individual Plaintiffs.  See id.  The allegations common to all Plaintiffs were summarized as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'"  Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line up and face the wall, [and] keep eyes forward."  Plaintiffs allege that, five minutes later, they were "pat-searched and led to the Rec[reation] Yard."  Seven minutes after they entered the recreation yard, Plaintiffs were handed cups and served with, approximately, half-a-cup of water per person.  From this point on, water was re-served to Plaintiffs on half-an-hour or hourly basis, although Plaintiffs were finding the supply of water insufficient, and the water itself insufficiently chilled.  According to Plaintiffs, at 8:45 A.M., that is, thirteen minutes after Plaintiffs were removed into the recreation yard, the Facility officials brought drug-sniffing canines into the Facility and began a search for controlled substances; the search inside the Facility continues for one hour and twenty-two minutes, and it was followed by a one hour and thirteen minutes search of the external

---

[3]  The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Ann Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Jane/Joan Doe Defendants, who are corrections officers or public advocates employed by the State of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections."  See Docket Entry No. 1, caption.

parts of the Facility and adjoining trailers.  After the
search was completed, Plaintiffs were ordered to line up
in the recreation yard . . . and, fifteen minutes later,
an unspecified number of [Plaintiffs] . . . was brought
into the Facility for lunch.  About half an hour later,
another group of [Plaintiffs] . . . was brought into the
Facility for lunch.  The remaining [Plaintiffs] . . .
were brought into the Facility to consume lunch in
unspecified sub-groups and time increments, with the last
Detainee being brought into the Facility no later than at
1:25 P.M., that is, about two hours after the entire
lunch service started.  Plaintiffs assert[ed] that
Plaintiffs experienced "intimidation" during their return
to the Facility as a result of a "show of force" which
ensued from the fact that the Facility officers were
"holding . . . 'Riot Guns.'"  Plaintiffs assert[ed] that
[they] were denied (a) access to bathrooms for the period
of five minutes, and (b) access to showers for about ten
minutes.  The . . . "Dayroom" and Mess Hall became . . .
available for regular use by [Plaintiffs] one hour and
twelve minutes after all [they] returned to the Facility.

Docket Entry No. 2, at 3-6 (citations and footnotes omitted).

Responding to Plaintiffs' common claims that

the search for controlled substances performed by the
Facility officials was an "unlawful 'prison' search"
impermissible with respect to . . . civilly-committed .
. . Plaintiffs [as well as to Plaintiff's allegations
that] the search . . . amounted to a cruel and unusual
punishment . . . since: (a) "there was [n]o shade in the
[recreation] yard with the exception of a small tent[,]
which could not accommodate" [everyone in the yard]; (b)
[the outside temperature was] 90 to 95 degree[s]"; (c)
re-servings of water to [Plaintiffs] was no more frequent
than every half an hour and the water served was "usually
warm"; and (d) corrections officers "brandished M-16
style guns with individualized mace balls, [and] other
weapons[,] such as batons and night sticks[,] were also
brandished,"

id. at 12, the Court dismissed these allegations for failure to

state a claim upon which relief may be granted.  See id. at 21-36.

Addressing Plaintiff's Fourth Amendment claims, the Court explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not "illegal," because Plaintiffs' expectation of privacy yield to the Facility officials' legitimate governmental interests to ensure that the Facility remains free of controlled substances. See Docket Entry No. 2, at 22-23.

With respect to Plaintiff's due process claims, the Court subdivided Plaintiffs' allegations into three groups: (1) those challenging Plaintiffs' conditions of confinement; (2) those asserting verbal and "visual" harassment; and (3) those related to Plaintiffs' medical conditions. See id. at 23-36. The Court clarified to Plaintiffs that acts or verbal (or "visual") harassment cannot, on their own, serve as a basis to cognizable constitutional challenges. See id. at 30-31. Addressing Plaintiffs' conditions of confinement claims, the Court explained to Plaintiffs that the Third Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship  over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir.

1983).  Taking judicial notice of the weather conditions existing in Plaintiffs' locale during the hours at issue,[4] the Court concluded that, being placed in the Facility's recreation yard for three to five hours on a summer morning, when the weather conditions were mild, could not amount to a "hardship over an extended period of time," or to an "adverse conditions" excessive in relation to the purpose of keeping Facility detainees outside the Facility during a legitimate search for controlled substances. See Docket Entry No. 2, at 26-27.

Finally, turning to Plaintiffs' medical claims, the Court pointed out that, since--according to the original complaint, the Facility's corrections officers and medical staff were highly attentive to Plaintiffs' common medical needs, plus these needs were minor (such as sunburn of Plaintiff's noses)--the actions of Defendants did not amount to punishment but rather was reasonably related to a legitimate governmental purpose of ensuring that the Facility was free of controlled substances.  Consequently, the Court dismissed all Plaintiffs' common claims.  Although the language of the original complaint suggested that certain Plaintiffs might have suffered a more serious medical need (different from sunburnt noses of the bulk of Plaintiffs), and the

---

[4]
    The weather conditions were as follows: temperature varied between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent, and western wind varied from 3.5 to 6.9 mph.  See Docket Entry No. 2, at 26

Court allowed these few Plaintiffs with potentially serious and unique medical needs to submit their respective amended complaints clarifying the medical treatment they received, see Docket Entry No. 2, at 35-36, Sanchez was not one of those few Plaintiffs.  With respect to Sanchez, the Court noted that, "according to the [original] Complaint, . . . Sanchez  . . . experienced *no* medical need of any kind." Docket Entry No. 2, at 11, 35 (emphasis in original).  Consequently, the original complaint was dismissed with prejudice as to Sanchez's allegations, and Sanchez was not granted leave to amend his pleading.  See Docket Entry No. 3.  In light of that decision, Sanchez's instant submission should be qualified as a motion for reconsideration.

## STANDARD OF REVIEW

### I.   Motion for Reconsideration

Generally, there are four basic grounds upon which a motion for reconsideration may be granted:  (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to bring a previously issued ruling in accord with an intervening change in prevailing law.  See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)(purpose of motion for reconsideration is to

correct manifest errors of law or fact or to present newly discovered evidence). However, mere disagreement with the district court's decision is inappropriate on a motion for reconsideration, and should be raised through the appellate process. Id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "The Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different Here, conclusion." Assisted Living, 996 F. Supp. at 442. "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J. 1998).

Here, Sanchez's instant submission fails to assert that the Court's reading of the original complaint or analysis of pertinent legal regime was erroneous. Similarly, Sanchez fails to state any fact that could be qualified as newly-discovered or previously unavailable evidence. Nor does he assert a change in prevailing law or suggests that dismissal of his motion would result in manifest injustice. Construed as a motion for reconsideration, Sanchez's instant submission has to be denied. This Court, however, takes notice of a statement recently made by Judge

Cavanaugh in his discussion of amended pleading submitted in
Howard v. Does, 07-5394 (DMC), a case opened for one of Plaintiffs
involved in the original litigation.

    Judge Cavanaugh stated that he

> share[d] concerns expressed by Judge Chesler in his
> assessment of analogously deficient [submissions] filed
> in this District by [P]laintiffs Williams and Haines.
> See Haines v. Does, 07-5387 (SRC); Williams v. Does,
> 07-5395 (SRC). Judge Chesler [had] observed that:
>
>> the actual language used in [these submissions]
>> appears to be an unreliable source of information
>> in view of excessive and suspicious similarities
>> between the language used in [these submissions]
>> and that in the Original Complaint, as well as in
>> [the amended complaint of the inmate presumed to be
>> the key draftor of the original complaint. Judges
>> Chesler and Cavanaugh] expresse[d their] grave
>> concern about the possibility that [the] instant
>> litigation is being hijacked by one of the original
>> Plaintiffs (who might or might not be Plaintiff
>> Banda enjoined by [this Court] from future
>> meritless pro se in forma pauperis filings with
>> this District). Therefore, [Judges Chesler and
>> Cavanaugh were] reluctant to find . . . that
>> [Plaintiffs submitting amended pleadings] could not
>> state a cognizable claim.
>
> Haines v. Does, 07-5387, Docket Entry No. 8, at 19;
> Williams v. Does, 07-5395, Docket Entry No. 7, at 15-16.

    This Court shares in Judges Chesler and Cavanaugh's concern.
Indeed, at the instant juncture, it is entirely unclear whether
Sanchez's participation in preparation of the original complaint
exceeded the mere act of affixation of his signature.
Consequently, this Court is reluctant to examine Sanchez's instant
submission under a rigorous reading of the test applicable to
motions for reconsideration. This Court finds it more fitting to

read the test leniently, grant Sanchez motion for reconsideration and assess his instant submission as if it were an amended pleading.  See Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (A district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)").

## II.  Rule 8 Pleading Requirement

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to puss muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained:

[There are] two new concepts in Twombly.  First, . . . [t]he [Twombly] Court explained that "[w]hile a complaint

Page -10-

. . . does not need detailed factual allegations, a
plaintiff's [Rule 8] obligation to provide the 'grounds'
of his 'entitle[ment] to relief' requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Twombly, 127
S. Ct. at 1964-65 . . . . The Court explained that Rule
8 "requires a 'showing,' rather than a blanket assertion,
of entitlement to relief." Id. at 1965 n.3. Later, the
Court referred to "the threshold requirement of Rule
8(a)(2) that the 'plain statement' possess enough heft to
'sho[w] that the pleader is entitled to relief.'" Id. at
1966. The Court further explained that a complaint's
"[f]actual allegations must be enough to raise a right to
relief above the speculative level." Id. at 1965 & n.3.
Second, the Supreme Court disavowed certain language that
it had used many times before -- the "no set of facts"
language from Conley. See id. at 1968. . . . As the
Court instructed, "[t]his phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading
standard: once a claim has been stated adequately, it may
be supported by showing any set of facts consistent with
the allegations in the complaint." Twombly, 127 S. Ct.
at 1969.

Phillips, 515 F.3d at 230-32 (original brackets removed).

## DISCUSSION

## I.  Instant Allegations

Miraculously enough, Sanchez's instant submission is identical

in all substantive respects to amended complaints filed by all

original Plaintiffs, as well as to the original complaint. See,

e.g., Haines v. Does, 07-5387, Docket Entry No. 8, at 15-19

(detailing the nature of Haines' amended pleading); Williams v.

Does, 07-5395, Docket Entry No. 7, at 14-15 (detailing the nature

of Williams' amended pleading); Howard v. Does, 07-5394 (DMC),

Docket Entry No. (Providing the same analysis of Howard's amended

complaint); Walker v. Does, 07-5392 (WJM), Docket Entry No. 4

(amended complaint of Walker submitted simultaneously with that of Sanchez's).  Same as the original complaint and amended complaints of other Plaintiffs, Sanchez's instant submission re-asserts allegations already dismissed by this Court with prejudice, e.g., the claims that Defendants "gave unprofessional errors of judgement and gross negligence in ordering and enforcing the removal of all [Facility detainees] from the . . . [b]uilding to stay out in [h]ot [s]un for approx[imately six and a half] hours";[5] in fact Sanchez's amended complaint recites verbatim even such Plaintiffs' claims as their dismissed lamentation over the facts that the shaded area in the recreation yard was not large enough to accommodate all detainees placed, or that the water served to them during the time of the search was insufficiently chilled and provided in amounts and with frequency less than that desired by Plaintiffs.  Id. at 5-7.  Same as all Plaintiffs who submitted their amended complaints, Sanchez seeks $815 million in damages.  See id. at 8.

The sole difference between Sanchez's amended complaint and the original complaint (or amended complaints of other Plaintiffs) is limited to the following statement repeated four times:

---

[5]
    The time-line of events set forth in the original complaint indicates that Plaintiffs were taken to the recreation yard around 8:30 A.M. and returned back to the Facility no later than at 1:25 P.M., see Docket Entry No 1, at 10-11, that is about five hours later.  The basis for the six-and-a-half hours calculation is not clear either from the face of the original complaint or from Sanchez's instant submission.  However, for the purposes of this Court's constitutional analysis, the difference between five hours and six and a half is of no impact.

> Plaintiff was not allowed to take (by mouth) his Pain
> K.O.P. (Keep On Person) Medication when being ordered out
> of His bed that same morning to go to the . . .
> Rec[reation] Yard, Nor was Plaintiff allowed to bring the
> same to the . . . Rec[reation] Yard to be taken (by
> mouth) there; Due to an injury from the Bergen County
> Jail, Plaintiff . . . needs to take (by mouth) His Pain
> K.O.P. (Keep On Person) Medication when needed.

Docket Entry No. 4, at 4-5, 7 (capitalization in original).  Put in

simpler English, it appears that Sanchez tries to assert that: (1)

due to a prior injury, he was provided with a prescription pain

killer, which he takes when he experiences pain; and (2) Defendants

did not allow Sanchez to take a pill of the pain killer prior to

removing all detainees into the recreation yard, and Sanchez was

not allowed to take the pain killer with him.

This Court will concentrate on this particular allegation and

will not revisit the claims dismissed with prejudice in this

Court's November Order, since Sanchez cannot get a "second bite on

the apple" by merely reiterating dismissed claims.[6]

---

[6]

The doctrine of res judicata applies when "the same
issue was previously litigated by the same parties and
was actually decided by a tribunal of competent
jurisdiction." Duvall v. Attorney General of the
United States, 436 F.3d 382, 391 (3d Cir. 2006).  Three
requirements must be met.  There must be "(1) a final
judgment on the merits in a prior suit involving; (2)
the same parties or their privities; and (3) a
subsequent suit on the same cause of action."
CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d
187, 194 (3d Cir. 1999) (internal quotation marks and
citation omitted).  Res judicata applies both to claims
actually raised in the prior action and claims which
could have been raised but were not.  Id.  We take a
broad view of the "same cause of action" requirement,

II.  **Shortcomings of the Instant Allegations**

As drafted, Sanchez's amended complaint fails to state a cognizable claim, since nothing in his allegations indicates that Defendants sought to inflict unnecessary and wanton pain on Sanchez when Defendants removed all the Facility detainees into the Facility recreation yard in order to conduct a Facility-wide search for controlled substances.  Indeed, it was wholly reasonable for Defendants to prevent Sanchez from consuming a certain substance, since Defendants' mandate was to check the Facility for controlled substances and that, by definition, implied preclusion on consumption of any substance storaged within the Facility.

That said, there appears to be no reasonable relationship between Defendants' legitimate penological goal and a decision to deny an inmate properly prescribed pain medication; such decision might indicate an intent to punish in violation of the Fourteenth Amendment.  However, this general umbrella observation cannot be tied to Sanchez's instant submission, as drafted.

According to Sanchez, the Defendants ordered him out of bed and denied him consumption of his pain killer.  See Docket Entry No. 4, at 4-5, 7.  However, nothing in Sanchez's amended complaint

---

looking to "whether there is an essential similarity of the underlying events giving rise to the various legal claims."  Id. ( citing United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984)).
Gonzalez Cifuentes v. INS, 253 Fed. App. 173, 175 (3d Cir. N.J. 2007).

suggests that he was experiencing any pain when Defendants ordered him out of bed.  Since his pain killer was, allegedly, provided to him to be taken on "as needed" basis, the fact of Sanchez not taking his pain killer when he had no need to subside his pain could not qualify as punishment.  Moreover, nothing in the language of the Fourteenth Amendment obligates Defendants to be clairvoyant as to physical sensations experienced by inmates.  Hence, even if this Court is to presume that Sanchez actually experienced a certain pain that required consumption of his pain killer at the time when he was ordered out of bed, this Court cannot read a cognizable claim into Sanchez's allegations unless Sanchez asserts that he (or some other entity acting on his behalf) informed Defendants accordingly, either through a direct statement or through an indirect notification, which a reasonable person would understand as a statement that Sanchez was in pain and needed to take the pharmacological substance in his possession.

The same applies to Defendants' decision not to allow Sanchez to take his medication into the recreation yard.  Defendants' decision to keep all inmates' belongings within the Facility was reasonably related to their legitimate penological goal of searching the Facility and ensuring that it was free of controlled substances.  Conversely, there appears to be no reasonable relation between that legitimate penological goal and a decision to deny an ailing inmate placed in the yard access to his prescribed

medication.  However, Sanchez's instant submission neither asserts that he was in pain during his time in the recreation yard and, hence, in need of his medication, nor that he (or some other entity acting on his behalf) informed Defendants of that need, either directly or indirectly.[7]

As drafted, Sanchez's claim states that Defendants violated Sanchez's Fourteenth Amendment rights by merely denying him the opportunity to physically hold on to medication which he usually kept within his reach.  These allegations fail to state a cognizable claim, since due process does not provide Sanchez with possessory rights over a tangible, which cannot be interrupted for a few hours for a legitimate penologival purpose.  The fact that Sanchez wished to hold on to a container of pharmaceutical substance rather than any other tangible does not alter the analysis: the outcome would be the same had he wished to hold on to his favorite book or his lucky teddy bear.  The "punishment" aspect of the Due Process Clause could have been violated only by

_____

[7]     Sanchez's allegations are particularly incongruent in view of: (1) unambiguous statements in the original complaint indicating that a nurse was available to attend detainees during the time they were in the recreation yard; and (2) Sanchez's statement "[t]his [amended] complaint IS NOT against the Dep[ar]t[ment] of Correcti[ons] Officers that run [the Facility].  This [amended] complaint IS NOT against the [personnel] of Medical Dep[ar]t[ment, because] they are the ones that prescribed [the pain killer to Sanchez]".  Docket Entry No. 4, ¶¶ 19-20.  Since the foregoing indicates that the nurse available to detainees was aware of Sanchez's prescription, this Court is not entirely clear as to why Sanchez did not seek nurse's assistance in the event he experienced pain and needed his pain killer.

Defendants' conscious decision to subject Sanchez to pain that
could have been alleviated by consumption of his pain killer.

However, in light of this Court's dire doubts that Sanchez
meaningfully participated in preparation of his amended complaint,[8]
this Court is reluctant to read the shortcomings of his instant
pleading as an indication that Sanchez cannot state a claim if
granted leave to "re-amend" his amended complaint.  Indeed, this
Court cannot rule out the possibility that the actual facts were
such that Sanchez might be able to assert that he experienced the
degree of pain warranting consumption of his pain killer either at
the time when he was ordered out of bed or when he was placed in
the recreation yard, or in both circumstances.  Similarly, the
Court cannot rule out the possibility that the actual facts were
such that Sanchez might be able to assert that, either directly or
indirectly, he did notify a particular Defendant (or particular
Defendants) of his pain and the ensuing need to take his
medication.  Such allegations, if read in light of Defendants'
refusal to let Sanchez consumption of his pain killers, might state
a claim sufficient to pass muster under the Twombly standard.
Consequently, the Court will dismiss Sanchez' amended complaint

---

[8]
    Accord Haines v. Does, 07-5387 (SRC), Docket Entry No. 16, at
3 (a letter from one of the original Plaintiffs to Judge Chesler
confirming, inter alia, that Plaintiff Banda, the person whom this
Court presumed to be the draftor of the original complaint, has
been unduly abusing his legal knowledge and effectively hijacking
litigations of other Plaintiffs).

without prejudice and grant Sanchez leave to "re-amend" his pleading.[9]

<u>CONCLUSION</u>

For the foregoing reasons, Sanchez's amended complaint will be dismissed without prejudice. The Court will grant Sanchez leave to "re-amend" his amended complaint. Sanchez's application for appointment of <u>pro</u> <u>bono</u> counsel is denied without prejudice, as premature. An appropriate Order accompanies this Opinion.

s/William J. Martini

**WILLIAM J. MARTINI**
**United States District Judge**

Dated: July 8, 2008

---

[9] At this stage, Sanchez does NOT need to limit himself to first hand information or to conduct any discovery. However, his "re-amended" complaint shall state *facts* known to Sanchez directly or indirectly, rather than mere bold conclusions. For instance, a statement that "Defendants knew of Sanchez' s pain because they should have known, or somebody must have told them, or because Sanchez so divines" would be insufficient: Sanchez shall state at least *some facts* that led him to believe so. <u>See</u> <u>Phillips</u>, 515 F.3d at 230-34. Moreover, same as Judges Chesler and Cavanaugh in their handling of matters opened for other Plaintiffs, this Court stresses the fact that (while Sanchez may, if he so wishes, seek help from and/or consult with a licenced attorneys or discuss his case with unlicensed "jailhouse lawyers," or any of his acquaintances at the Facility and/or outside it, for the purposes of this litigation, including for the particular purposes of Sanchez's submission of his "re-amended" complaint) it is Sanchez-- and Sanchez alone--who is the master of his claims and the sole plaintiff in this action. In other words, this Court wishes to hear from Sanchez himself (rather than from the entity that hold Sanchez's hand and dictates Sanchez his statements), and reminds Sanchez that facts rather than eloquence is all what is expected of him, and it will be Sanchez--rather than some other person--who is affected by the content of future submissions made in this matter.